UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MAYA HAYUK, :
:
                    Plaintiff, :     Case No: 15-cv-04887 (LTS) (HBP)
:
          v. :     **ORAL ARGUMENT**
:     **<u>REQUESTED</u>**
STARBUCKS CORPORATION and :
72ANDSUNNY PARTNERS, LLC, :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF<br>THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>


FRANKFURT KURNIT KLEIN & SELZ, P.C.
Amelia K. Brankov
Andrew D. Jacobs
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendants*
*Starbucks Corporation and*
*72andSunny Partners, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND...................................................................2

    *The Hayuk Works* ..........................................................................2

    *The Frappuccino Campaign* ............................................................5

    *Hayuk's Claims* ...........................................................................8

ARGUMENT ..................................................................................8

    HAYUK'S COPYRIGHT INFRINGEMENT CLAIMS MUST BE DISMISSED............8

    A.    The Court Can Assess Substantial Similarity on a Motion to Dismiss.................9

    B.    Second Circuit Precedent Shows that Hayuk's Infringement Claims Are Baseless ...............................................................................9

    C.    The Works Are Not Substantially Similar as a Matter of Law ...........................15

        1.    Hayuk Cannot Protect Her "Style"...........................................15

        2.    Hayuk's Comparison of the Works Contained in the Complaint Demonstrates the Lack of Substantial Similarity.....................................16

        3.    There are No Protectible Similarities Between the Hayuk Works and the Frappuccino Works ...............................................17

    D.    Hayuk's Contributory Infringement Claim Must Be Dismissed .........................24

CONCLUSION................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Attia v. Soc. of the New York Hosp.*,
  201 F.3d 50 (2d Cir.1999) .......................................................................... 11, 17

*Bill Diodato Photography, LLC v. Kate Spade, LLC*,
  388 F. Supp. 2d 382 (S.D.N.Y. 2005) ...................................................................10

*Cameron Indus. Inc. v. Mother's Work, Inc.*,
  338 F. App'x 69 (2d Cir. 2009) ..................................................................... 10, 14, 23

*Cameron Indus., Inc. v. Mothers Work, Inc.*,
  No. 06-cv-1999 (S.D.N.Y Mar. 24, 2008) ...........................................................14

*Canal+ Image UK Ltd. v. Lutvak*,
  773 F. Supp. 2d 419 (S.D.N.Y. 2011) ...................................................................24

*Dean v. Cameron*,
  53 F. Supp. 3d 641 (S.D.N.Y. 2014)............................................................. 11, 16, 17, 21

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006) ...................................................................4

*Faulkner v. Nat'l Geographic Enters. Inc.*,
  409 F.3d 26 (2d Cir. 2005) ...................................................................24

*Gordon v. McGinley*,
  No. 11 Civ. 1001, 2011 WL 3648606 (S.D.N.Y. Aug. 18, 2011), *aff'd in
  relevant part*, 502 F. App'x 89 (2d Cir. 2012)............................................................*passim*

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008) ...................................................................9

*In Design v. Lynch Knitting Mills, Inc.*,
  689 F. Supp. 176 (S.D.N.Y.), *aff'd sub nom. In Design v. Lynch Knitting*, 863
  F.2d 45 (2d Cir. 1988) ...................................................................24

*Judith Ripka Designs, Ltd. v. Preville*,
  935 F. Supp. 237 (S.D.N.Y. 1996)................................................................. 1, 15

*Kaplan v. Stock Market Photo Agency*,
  133 F. Supp. 2d 317 (S.D.N.Y. 2001) ...................................................................11

*Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*,
  557 F. App'x 77 (2d Cir. 2014) (Summary Order) ............................................................13

*Kroencke v. Gen. Motors Corp.*,
  270 F. Supp. 2d 441 (S.D.N.Y. 2003) *aff'd*, 99 F. App'x 339 (2d Cir. 2004)........................15

*Kroencke v. Gen. Motors Corp.*,
  99 F. App'x 339 (2d Cir. 2004) ........................................................................................11

*Mena v. Fox Entm't Grp., Inc.*,
  No. 11 Civ. 5501, 2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012) ................................... 10, 11

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ......................................................................................... 9, 10, 24

*Queenie, Ltd. v. Sears, Roebuck & Co.*,
  124 F. Supp. 2d 178 (S.D.N.Y. 2000) ......................................................................... 13, 24

*Reece v. Marc Ecko Unltd.*,
  No. 10 Civ. 02901, 2011 WL 4112071 (S.D.N.Y. Aug. 19, 2011), *report and
  recommendation adopted*, 2011 WL 4069637 (S.D.N.Y. Sept. 9, 2011) ................................9

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ...........................................................................................8

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) ............................................................................................10

**Statutes**

Copyright Act, 17 U.S.C. § 101 *et seq.* ................................................................. 15, 16, 23

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 8, 9

Defendants Starbucks Corporation ("Starbucks") and 72andSunny Partners, LLC ("72andSunny") (collectively, "Defendants"), submit this memorandum of law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint and Demand for Jury Trial (the "Complaint") of plaintiff Maya Hayuk ("Hayuk").

## PRELIMINARY STATEMENT

In her Complaint, Hayuk, a painter and muralist, alleges that Starbucks and its advertising agency 72andSunny infringed the copyrights in five of her works through various elements of a promotional campaign for the Starbucks Frappuccino. The Hayuk works at the center of this dispute are abstract, geometric, psychedelic-looking paintings that combine multicolored, basic shapes to create intricate patterns. Defendants' allegedly infringing works – designs appearing in online and in-store advertising for the Frappuccino – share with Hayuk's works nothing more than certain geometric shapes and the fact that they are multicolored.

Hayuk is notably vague in alleging exactly which of Defendants' works infringe which of her works. By failing to include such allegations, her claims amount to an attempt to protect her "look" or style. But style alone simply is not protectible under the copyright law, and courts have summarily dismissed claims for this reason. *See, e.g., Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 248 (S.D.N.Y. 1996).

Where Hayuk does attempt a side-by-side comparison between her works and the Frappuccino artwork (Complaint ("Compl.") at 21), she crops and rotates both her and Defendants' works to create an illusion of similarity. She also compares frozen screenshots of Defendants' video advertisements to her own static works. None of these tactics are proper for purposes of the substantial similarity analysis, and they should be disregarded. *See, e.g., Gordon*

*v. McGinley*, No. 11 Civ. 1001, 2011 WL 3648606, at *4-5 (S.D.N.Y. Aug. 18, 2011), *aff'd in relevant part*, 502 F. App'x 89 (2d Cir. 2012).

A proper comparison of Hayuk's works to Defendants' works shows that they are not substantially similar as a matter of law.  On the contrary, an accounting of the fundamental dissimilarities among the works shows both that Defendants' campaign has an entirely different "total concept and feel" from Hayuk's paintings and that any similarities between the two sets of works extend only to unprotectible elements of Hayuk's works.  Accordingly, Hayuk's claims should be dismissed in their entirety, with prejudice.

<b><u>FACTUAL BACKGROUND</u></b>

***The Hayuk Works***

Maya Hayuk is a visual artist who specializes in abstract, geometric paintings and murals. Compl. ¶¶ 9-13.  Her work has been commissioned by many businesses, and she regularly licenses her work for use in connection with consumer products.  Compl. ¶¶ 13-14.  Between 2009 and 2011, Hayuk created five artworks that she alleges Defendants have infringed: *The Universe*, *The Universe II*, *Hands Across the Universe (Portrait of the Aura of Iman Bowie)*, *Kites #1* and *Sexy Gazebo* (Compl. ¶¶ 15-19) (collectively, the "Hayuk Works"):




***Hands Across the Universe***                         ***The Universe***



*The Universe II*

Three Hayuk Works – *Hands Across the Universe*, *The Universe*, and *The Universe II* (Compl. Exs. A & B; collectively, the "*Universe* Works") – are giant acrylic paintings.  In each work, two sets of brightly colored rays radiate to the left and right from two symmetrical points along the work's horizontal midline.  The intersection of the rays forms a large central diamond.  Outside the diamond formation, the rays terminate with rounded borders, inside many of which is a painted circle.  The circles are arranged symmetrically across each painting.  Each of the *Universe* Works contains extensive drip marks.



*Kites #1*

Hayuk's next piece, *Kites #1* (Compl. Ex. D), is a painting consisting of vertical, horizontal, and cross-hatch diagonal bands. The bands within each set – vertical, horizontal, diagonal – are roughly parallel to each other. They are painted in varying, often semi-transparent colors.  While the color scheme is varied, there is a heavy use of dark colors: blue, purple, black

3

and maroon.  Unlike the rays in the *Universe* Works, which become wider as they radiate from their origin, each individual band in *Kites #1* is roughly the same width throughout.  Again, drip marks and other apparent artifacts of the painting process lend the work a spontaneous quality.  Still, the geometric arrangement of the bands provides an overall sense of order to the piece, not unlike a quilt.



**Sexy Gazebo**

The fifth Hayuk Work, *Sexy Gazebo* (Compl. Ex. C), is a triptych that lines the three interior walls of a physical gazebo.[1]  On the left and right panels of the triptych, multicolored rays emanate outward in all directions from a central point.  Rays with cooler hues – blue, black, white, light green – radiate toward the center from points near the edges of the panel.  Similar to the *Universe* Works, the rays create an image of a diamond.  The central panel seems to stretch and refract the rays that form the diamonds of the outer panels, generating a kaleidoscopic effect and yet another diamond in the center of the work.  At the various edges of the work, the painting becomes misaligned, as if the artist had split the painting and slid one side a few inches past the other.  Once again, the work's various smudges and drip marks serve as a counterpoint to an otherwise orderly form.

---

[1] *See* Maya Hayuk, *Sexy Gazebo*, http://www.mayahayuk.com/sexyGazebo.html.  The Court may take judicial notice of the contents of Hayuk's public website.  *See, e.g.*, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006).

*The Frappuccino Campaign*

In the fall of 2014, 72andSunny, an advertising agency, was developing a campaign for Starbucks' "Frappuccino" line of blended, frozen beverages.  Compl. ¶ 20.  On or about October 10, 2014, 72andSunny contacted Hayuk to see if she was interested in creating artwork for the Frappuccino campaign and shared their vision of how the parties might work together.  *See* Compl. ¶¶ 21-25.  Although Hayuk initially expressed interest in the project, she ultimately declined 72andSunny's offer on October 20, 2014.  *Id.*  The Frappuccino campaign went on with artwork not created by Hayuk, launching in 2015 with an array of advertising and promotional materials.  *See* Compl. ¶¶ 26, 28.

Hayuk claims that these materials infringe the copyrights in the Hayuk Works.  She identifies several allegedly infringing works (the "Frappuccino Works," Compl. at 10-20), falling into four categories: (1) Starbucks webpages promoting various Frappuccino flavors (the "Frappuccino Webpages," Compl. at 10-12), (2) in-store advertisements for the Frappuccino, appearing on Starbucks menus and sidewalk easels ("Frappuccino In-Store Art," Compl. at 16-18), (3) product packaging for the Frappuccino and images thereof (the "Frappuccino Cup," Compl. at 13-14), and (4) screenshots from promotional videos for the Frappuccino (the "Frappuccino Screenshots," Compl. at 14-16, 19-20).

 

**Frappuccino Webpages (Compl. at 10-12)**

  

 

**Frappuccino In-Store Art (Compl. at 16-18)**

The Frappuccino Webpages and In-Store Art feature stylized depictions of Frappuccinos.  In the ads, one or more Frappuccino containers is rendered in a two-dimensional, chalk outline.  An iconic green Starbucks straw emerges from the outline of the Frappuccino's domed lid, and a swath of colors emanates vertically from the straw, within an inverted-triangle shape.  In each of the triangles are brightly colored stripes, crisscrossing at irregular angles.  The stripes have a texture much like the Frappuccino's chalk-outline containers.



**Frappuccino Cup (Compl. at 13; *see also* Declaration of Amelia K. Brankov ("Brankov Decl.") Ex. A)**

The Frappuccino Cup also contains a color-filled inverted triangle, but its vertex is the top of the "i" in the word "mini," which adorns the bottom of the cup, rather than the tip of a Starbucks straw.  The inverted triangle occupies roughly as much space as the green Starbucks logo to which it is adjacent.  Unlike the webpages and in-store art, the multicolored bands have a solid, smooth, and uniform texture.  *See* Brankov Decl. Ex. A.



**Frappuccino Screenshots (Compl. at 14-16, 19-20)**

Finally, the Frappuccino Screenshots display fleeting moments from four videos advertising the Frappuccino (the "Frappuccino Videos").[2]  Each 15- to 16-second video opens with an animation that lasts, in total, about two seconds, and from which the screenshots are derived.  In the animations, two Frappuccino chalk outlines merge into one, while overlapping colored stripes fill the outline and explode through the straw in a chaotic jumble.  *See* Brankov Decl. Ex. B.  For the next ten seconds, the viewer is presented with vibrant scenes of youth having fun:  friends play in a multicolored bouncy castle, jump into lakes, and dive into pools while wearing neon glowsticks; they cook s'mores around a beach bonfire, ride dirt bikes, and

---

[2] These videos – the British and German versions of "Frappuccino Happy Hour," "S'mores Frappuccino," and "Caramel Ribbon Crunch Frappuccino" –  are included on the disk enclosed as Brankov Decl. Ex. B.  For purposes of this motion, the German and British versions of "Frappuccino Happy Hour" are identical (*see* Compl at. 14, 15).

skateboard around fireworks; they hit golf balls from a beach cliff, do backflips, and laugh in the sun.  *See id.*  Another two-second animation, the mirror image of the first, begins approximately 12 seconds into each video: the stripes cram back into the Frappuccino container, the outline of which fills with a lifelike image of a Frappuccino beverage and splits into two.  *See id.*  The last four seconds of the ad feature promotional copy flanked by the two Frappuccinos.[3]  *See id.*

***Hayuk's Claims***

Hayuk commenced this action on June 23, 2015.  By her Complaint, Hayuk asserts claims of copyright infringement against Starbucks and five claims of copyright infringement against 72andSunny – in both instances, one claim for each allegedly infringed Hayuk Work.  *See* Compl. ¶¶ 37-76.  Hayuk also asserts a claim of contributory copyright infringement against 72andSunny.  *See* Compl. ¶¶ 77-83.

<u>ARGUMENT</u>

**HAYUK'S COPYRIGHT INFRINGEMENT CLAIMS MUST BE DISMISSED**

A plaintiff's copyright infringement claim should be dismissed unless the plaintiff can establish that "(1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a 'substantial similarity' exists between the defendant's work and the protectible elements of the plaintiff's work."  *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (affirming dismissal of copyright infringement claim for lack of substantial similarity).  Because the images contained in the Complaint – along with certain videos referenced in and integral to it – demonstrate the absence of substantial similarity, Hayuk's infringement claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[3] Although not material for purposes of this motion, the image of the female wearing sunglasses filled with rays was included in the 2014 Frappuccino campaign, before the time that the negotiations with Hayuk that are alleged in the Complaint occurred.

**A.**     **The Court Can Assess Substantial Similarity on a Motion to Dismiss**

The Second Circuit has made clear that a court may dismiss a complaint on a Rule

12(b)(6) motion for lack of substantial similarity.  *See Peter F. Gaito Architecture, LLC v.*

*Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("[W]here, as here, the works in question are

attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the

similarity between those works in connection with a motion to dismiss, because the court has

before it all that is necessary to make such an evaluation"); *see also Gordon v. McGinley*, 2011

WL 3648606, at *7 (dismissing pursuant to Rule 12(b)(6) an artist's  claim that photos created

for Levi's campaign infringed her photographs); *Reece v. Marc Ecko Unltd.*, No. 10 Civ. 02901,

2011 WL 4112071, at *13 (S.D.N.Y. Aug. 19, 2011) (dismissing claim that artwork in

defendant's video game was substantially similar to plaintiff's artwork), *report and*

*recommendation adopted*, 2011 WL 4069637 (S.D.N.Y. Sept. 9, 2011).[4] Thus, this Court can

and should dismiss Plaintiff's claims because a visual comparison of the works demonstrates that

they are not substantially similar as a matter of law.

**B.**     **Second Circuit Precedent Shows that Hayuk's Infringement Claims Are Baseless**

To evaluate substantial similarity, courts generally apply the "ordinary observer test,"

which asks "whether an ordinary observer, unless he set out to detect the disparities, would be

disposed to overlook them, and regard [the] aesthetic appeal as the same."  *Peter F. Gaito*

*Architecture, LLC*, 602 F.3d at 66 (internal quotation marks omitted).  "When faced with works

---

[4] Because Hayuk's copyright claim relies on the Frappuccino Videos, and those materials are integral to her claim, this Court may properly consider those videos (Brankov Decl. Ex. B) on this motion. *See, e.g., Peter F. Gaito Architecture, LLC*, 602 F.3d at 64; *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1 (S.D.N.Y. 2008) (considering DVD copy of film attached to defendant's declaration in support of motion to dismiss copyright infringement claim where film was referred to in the complaint and integral to plaintiff's allegations).

that have both protectible and unprotectible elements," however, the Court applies the "more discerning ordinary observer" test, in which it "must attempt to extract the unprotectible elements from consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.* (internal quotation marks omitted).  Because the Hayuk Works make extensive use of standard geometric forms such as circles, rectangles, and rays, the more discerning observer test applies here.  *See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) ("the catalogue of standard geometric forms" falls within the public domain).[5]

While a court applying the more discerning observer test must "attempt to isolate the protectable, 'artistic aspects of a work' from the elements that are not protectable," *Cameron Indus. Inc. v. Mother's Work, Inc.*, 338 F. App'x 69, 71 (2d Cir. 2009), it is also "guided by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66 (citations omitted).  The "total concept and feel" inquiry, however, "is not carte blanche to rest findings of infringement on vague or amorphous determinations." *Mena v. Fox Entm't Grp., Inc.*, No. 11 Civ. 5501, 2012 WL 4741389, at *6 (S.D.N.Y. Sept. 29, 2012).  Rather, the Court must "'take[] care to identify precisely the particular aesthetic decisions – original to the plaintiff and copied by the defendant

---

[5] Even if the "ordinary observer" test were applicable, the works would lack substantial similarity as a matter of law for the reasons set forth herein.  *See Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 394 (S.D.N.Y. 2005) ("The cases agree that the relevant comparison is between the protectible elements in the [relevant works], but that those elements are not to be viewed in isolation.") (internal quotation marks and alterations omitted).

– that might be thought to make the designs similar in the aggregate.'" *Id.* (citing *Tufenkian*, 338 F.3d at 134).

By the same token, courts routinely hold that works are not substantially similar when their *dissimilarities* substantially outweigh their similarities, as "dissimilarity in realization or expression can make clear . . . that the similarity extends only to unprotectible concepts or ideas." *Attia v. Soc. of the New York Hosp.*, 201 F.3d 50, 58 (2d Cir.1999); *see, e.g.*, *Kroencke v. Gen. Motors Corp.*, 99 F. App'x 339, 340 (2d Cir. 2004) ("total look and feel" of defendant's advertisement and plaintiff's works were very different despite sharing "a general stylistic sense" because the "differences [were] more overwhelming"); *Kaplan v. Stock Market Photo Agency,* 133 F. Supp. 2d 317, 326 (S.D.N.Y. 2001) (holding that "differences between [works at issue] far outweigh the similarities . . . such that no reasonable jury could find that the two works are substantially similar").

Applying these principles, courts in the Second Circuit have readily dismissed claims of copyright infringement where an allegedly infringing design differed significantly from the original and shared only unprotectible elements. For example, in *Dean v. Cameron*, 53 F. Supp. 3d 641 (S.D.N.Y. 2014), the court granted a motion to dismiss plaintiff's claim that defendants infringed his copyrights through their work on the film *Avatar*, holding that the film was not substantially similar to plaintiff's works as a matter of law. Plaintiff's alleged infringement of fourteen of his works, including the following:



**Plaintiff's Work (*Stairway to Heaven*)     Defendants' Work ("Hallelujah Mountains")**



**Plaintiff's Work (*Arches Mist*)       Defendants' Work ("Stone Arches")**

The court acknowledged that these images were "indisputably similar insofar as they present the natural world in a fantastical way," including "by depicting airborne land masses"; it further noted that the images shared "the shapes of some of the land masses" and "features such as foliage and waterfalls." *Id.* at 648-49.  But the court found the many differences between the works dispositive: *Stairway to Heaven* contains rocks "more or less the same size, ascending to a single tree, all against a black backdrop," while the Hallelujah Mountains "features larger, more realistic landmasses, decreasing in size and covered in vegetation, against a backdrop of other mountains." *Id.* at 649.  Similarly, "the stone arches in most of Plaintiff's artworks are relatively smooth and set in barren land or seascapes," while "the stone arches in *Avatar* are jagged and uneven [and] are overgrown with trees and moss." *Id.* at 650.  In all, the court concluded, the similarities in the works "relate[d] to elements that are unprotected, such as ideas . . . or features

12

taken from nature," and "the differences between each of [Plaintiff's] works and *Avatar* overwhelm any superficial similarity." *Id.* at 649-50.  Accordingly, the court dismissed the complaint for failure to state a claim.  *Id.* at 650-51.

In *Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77 (2d Cir. 2014) (Summary Order), the Second Circuit affirmed the district court's dismissal, on a motion to dismiss, of a copyright claim based on the alleged infringement of plaintiff' lace waistband design:



The court held that although the two designs "employ similar elements – curling sprigs, leaves, and flowers – placed in a similar spatial arrangement," they did not "convey a substantially similar aesthetic appeal."  *Id.* at 80.  The court relied for its conclusion in large part on an accounting of the dissimilarities between the designs:  plaintiff's sprigs were "long, winding, and delicate" while defendant's were "shorter and more compact"; plaintiff's leaves had "distinctive indentations and vary in shape and size," while defendant's "have no indentations and are uniform in shape and size;" and plaintiff's flowers grew "upward and away from the nearest border," while defendant's grew "downward towards the border."  *Id.*  "[T]he accumulation of these differences," the Second Circuit concluded, "gives [defendant's] design a substantially different 'total concept and overall feel'" from plaintiff's.  *Id.*  As a result, the court held that the works were not substantially similar as a matter of law.  *Id.*; *see also Queenie, Ltd.*

*v. Sears, Roebuck & Co.* 124 F. Supp. 2d 178, 181 (S.D.N.Y. 2000) (dismissing claim where fabric designs shared only the "ideas and general concepts" of "multi-colored squares posited against dark backgrounds").

Similarly, in *Cameron Industries*, 338 F. App'x at 69-71, the Second Circuit affirmed the district court's finding on a motion for summary judgment[6] that the defendant's fabric design was not substantially similar to the plaintiff's fabric design:



**Plaintiff's Design**        **Defendant's Design**

The district court had emphasized that although the designs shared certain elements – including "black circles with an interior white ring," "a white exterior space or border," "black 'boxes' with at least one interior white outline," and "circles that [are] parallel [to] each other" – the "total effect of each design is distinct . . . in large part because of the differences in how each is arranged." *Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06-cv-1999 (S.D.N.Y Mar. 24, 2008). In affirming, the Second Circuit recognized that plaintiff's design was "abstract and artistic," but held that the differences "carefully described by the district court" rendered the works "not substantially similar." *Cameron*, 338 F. App'x at 71.

---

[6] While *Cameron* was decided on a motion for summary judgment, the defendant in the action did not file a motion to dismiss.

As shown below, Hayuk's assertion of substantial similarity is even weaker than the plaintiffs' unsuccessful claims in these cases, and her infringement claims should be dismissed accordingly.

## C.   The Works Are Not Substantially Similar as a Matter of Law

### 1.   Hayuk Cannot Protect Her "Style"

As an initial matter, Hayuk is notably vague in alleging exactly which materials in the Frappuccino Campaign infringe which of the Hayuk Works.  Instead, she circularly defines "Infringing Frappuccino Campaign Artwork" as "artwork that is substantially similar to one or more of Hayuk's copyrighted Works" (Compl. ¶ 26), without tying each campaign work to a corresponding Hayuk Work.  That Hayuk included *five* artworks in her Complaint (at least three of which – the *Universe* Works – have a similar "look") suggests that she seeks protection for her works in the aggregate, effectively for her artistic style.  *See, e.g.*, *Judith Ripka Designs, Ltd.*, 935 F. Supp. at 248 ("Plaintiff's introduction of many pieces of jewelry and photographs, sketches and advertisements picturing slightly different pieces that have the same 'look' suggests that Plaintiff seeks protection for a style of jewelry design.").

But style, independent of any particular expression of it, is not protectible and thus does not form a proper object of comparison to the Frappuccino Works.  *See id.* ("The copyright laws do not protect styles, but only particular original designs.").  Indeed, "nothing in the Copyright Act of 1976 . . . or in the precedents of this Circuit supports the view that a plaintiff's entire *oeuvre*, or even an aggregated portion of it, may be used as the point of comparison where the works included therein bear little or no relation to one another beyond 'style.'"  *Kroencke v. Gen. Motors Corp.*, 270 F. Supp. 2d 441, 443 (S.D.N.Y. 2003) *aff'd*, 99 F. App'x 339 (2d Cir. 2004).

Were it otherwise, artists would be allowed to use the Copyright Act as a means to prevent others from working in a similar style, which is not a purpose that the Copyright Act is intended to serve.  Neither plaintiff nor any other artist has a monopoly on the common idea or style of artwork that explores colors and shapes.  *See Dean*, 53 F. Supp. 3d at 648 (finding on a motion to dismiss that "Plaintiff does not have a monopoly on the idea of floating or airborne land," citing Jonathan Swift's *Gulliver's Travels* and Led Zeppelin's *Stairway to Heaven*). Hayuk herself does not work in a vacuum, but is one of many contemporary artists who experiment with bright colors, rays, and abstract, geometric patterns.  *See, e.g.*, Roberta Smith, *Art In Review: Mark Grotjahn*, N.Y. Times, Sept. 22, 2006, *available at* http://www.nytimes.com/2006/09/22/arts/design/22gall.html; *45 Painters Under 45*, L.A. Times, *available at* http://www.latimes.com/entertainment/la-ca-1202-undead-04_idgpfykf-photo.html (featuring artwork by Mark Grotjahn); Alex Williams, *After the Internet, There's Always Art*, N.Y. Times, Aug. 4, 2010, *available at* http://www.nytimes.com/2010/08/05/ fashion/05upclose.html (featuring artwork by Jim Lambie).

Accordingly, the Court must disregard Hayuk's claims to the extent they amount to allegations that her "style" is infringed.  Instead of aggregating Hayuk's work based on generalities, the Court "must consider each allegedly infringed work independently."  *Dean*, 53 F. Supp. 3d at 647.

> 2.   Hayuk's Comparison of the Works Contained in the Complaint Demonstrates the <u>Lack of Substantial Similarity</u>

To the extent Hayuk compares her works independently to the Frappuccino Works, she does so in the side-by-side comparisons on page 21 of the Complaint.  Exhibit C of the Brankov Declaration reproduces each side-by-side comparison alongside the complete Hayuk Work allegedly infringed.  As Exhibit C shows, the comparisons set forth in the Complaint are the

result of significant manipulation.  *First,* all five of the comparison images of the Hayuk Works created by Ms. Hayuk are heavily cropped.  *Compare* Compl. at 21, *with* Brankov Decl. Ex. C. *Second,* four of the five Hayuk cropped images are rotated ninety degrees.  *See id.  Third*, Hayuk cropped one of the Frappuccino Works in order to exaggerate the multicolored rays, excising a large portion of the cups that are featured in that work.  *Compare* Compl. at 21 (cropped image of frappuccino.com), with *id.* at 12 (screenshot of frappuccino.com).  *Fourth,* Hayuk compares two of her static works to screen grabs from the Frappuccino Videos, which is improper for the reasons discussed below in Point C.3.b.  *See id.*

In this vain attempt to bolster her infringement claims, Hayuk invites the Court to view only "parts of a work in isolation," which would make it impossible for the Court to assess the works' total concept and feel.  *Dean*, 53 F. Supp. 3d at 647.  Accordingly, the Court should not consider her cropped images, as they are improper efforts to manipulate the record.  *See id.* at 648 (improper to "bolster" an infringement claim by "cropping [images], rotating them, and the like"); *Gordon*, 2011 WL 3648606, at *4 (rejecting plaintiff's "attempts to manipulate the comparison" by "flipping" the allegedly infringing image).

       3.      There are No Protectible Similarities Between the Hayuk Works and the <u>Frappuccino Works</u>

A proper comparison of the Hayuk Works to the Frappuccino Works shows that the works do not share the same "total concept and feel," and taking stock of the works' dissimilarities "make[s] clear . . . that the similarity extends to unprotectable concepts or ideas" – namely, basic geometric shapes and colors.  *Attia,* 201 F.3d at 58.

       a.     *Kites #1*

When viewed in its entirety, it is clear that there is no protectible expression in *Kites #1* that is even remotely similar to the Frappuccino Art.  In *Kites #1*, Hayuk created a methodical

diagonal cross-hatch pattern.  The total concept and feel of the work is of a somewhat

psychedelic quilt or grid.  By contrast, none of the Frappuccino Works contain a grid-like

pattern.  Rather, the Frappuccino Works consist of disordered arrays of bands of differing sizes.

Moreover, to the extent the bands in the Frappuccino Works are ordered at all, they are oriented

with respect to a single focal point: either the tip of the Frappuccino straw or the "i" in the word

"mini."  *Kites #1* contains no such focal point.  *Kites #1* also contains significant amounts of drip

marks and errant paint patches, which do not appear in the Frappuccino Works.

 In the Complaint, Hayuk compares *Kites #1* to the artwork displayed on

frappuccino.com:



      **Starbucks' Frappuccino.com**



       *Kites #1*

Compl. at 21.  The frappuccino.com site contains an image of a black background with block

text in white with drawings of six Frappuccino cups, each with different colors which visually

display the beverage flavors.  *See* Compl. at 21.  Emanating from one of the cups is a V-shape

form of brightly-colored bands, as if a burst of flavor and vibrancy is shooting out from the

drink.  *Kites #1* contains none of these elements.  Nor does it have a total concept and feel of

kinetic or directed movement, which is the signature look of the Frappuccino Works.

Accordingly, Hayuk's Counts V and X, alleging that Defendants infringed *Kites #1*, must be

dismissed.

b.      *The Universe Works*

Hayuk claims that the Frappuccino Works infringe all three *Universe* Works.  The gestalt of each of the *Universe* Works is a complex system of discrete and interlocking parts forming a universe-like space.

The Frappuccino Works share none of the elements that provide the *Universe* Works their total concept and feel.  To start, not one of them contains rays terminating with rounded edges, orb-like forms, central diamond formations, heavy dripping, or symmetry along a central vertical axis, five predominant aspects of the *Universe* Works.  Equally important, none of the *Universe* Works contain ray-like shapes pointing vertically, which is universal expression in the Frappuccino Works.  Unlike the rays in the *Universe* Works, some of the stripes in the Frappuccino Works are roughly equal in width, while others vary; some are parallel, while others are arranged at cross angles.  Almost none have an apparent origin or terminus, and the stripes intersect at odd and varying angles, again giving a sense of chaos rather than control.  Overall, the texture of Defendants' designs is not drippy and paint-like, but rough, evoking chalk.  These features create a total concept and feel of a disorderly array of colored bands, without logic or geometric precision.  These dissimilarities alone outweigh any similarities between the *Universe* Works and the Hayuk Works, and comparing the works in further detail only corroborates this conclusion:

*The Universe*

In her Complaint, Hayuk compares *The Universe* to a sidewalk chalkboard sign:





**Starbucks' Paris Retail Location**                    *The Universe*

Compl. at 21.  Like the frappuccino.com art, the chalkboard signage consists of a black

background, white text, Starbucks beverage cups, and multicolored rays bursting from a straw.

*The Universe* shares none of these elements except the elemental, non-protectible black

background.  Instead, it features the five distinct elements of the *Universe* Works discussed

above (central diamond figure, rays terminating with rounded edges, circles, drip marks and

symmetry).  What is more, some of the rays seemingly split in half, and many of the orbs contain

concentric, solid-colored circles.  None of this expression is contained in the chalkboard art.

   *The Universe II*

   Hayuk compares the *Universe II* to a screenshot of a 16-second video:





**Starbucks' YouTube Video**                    *The Universe II*

Compl. at 21.  Courts in this district have previously rejected attempts, like Hayuk's, to base a

claim of copyright infringement in still art on a screen grab from a video.  In *Gordon*, for

20

example, the plaintiff alleged that a variety of screenshots infringed her still photographs.  The court noted that the screenshots were "derived from a wholly dissimilar and dynamic medium, in which camera angles, lighting, and focus are changing at a rate of 29.4 frames per second."  2011 WL 3648606, at *6.  Further finding that the original work "[bore] no likeness to the pace and pulse of the corresponding [video]," the court held that the screenshots were not substantially similar to the photographs.  *Id.*; *see also see Dean*, 53 F. Supp. 3d at 648 ("tactics" such as "presenting single static frames from scenes comprised of hundreds if not thousands of frames . . . cannot be used to bolster an infringement claim").

*Gordon* and *Dean* squarely apply here.  The screenshot to which Hayuk compares *The Universe II* is a mere split-second snippet of 15-16 second advertisements, which feature dozens of shots of youthful activity.  *See* Brankov Decl. Ex. B.  The brief animations that begin and end the Frappuccino videos, and from which the screenshot are taken, contain the same "pace and pulse" as the remainder of the ads (*Gordon*, 2011 WL 3648606, at *6), which the Hayuk Works, by their very nature, cannot achieve.  Unlike the static rays in the Hayuk Works, the bands of color in the Frappuccino videos move and shake, amassing in and shooting forth from a Frappuccino cup, eventually bursting to fill the screen.  The Hayuk Works, complex as they are, do not and cannot convey the narrative that the animations' angles, lighting, and arrangement do.

Just as damaging to her claim, even if one improperly compared the screenshot above to the *Universe II*, it would be obvious that the works lack a shared total concept and feel.  As with her comparison of Defendants' chalkboard art to the *Universe,* Hayuk's work contains a central diamond figure, rays terminating with rounded edges, circles, drip marks, and symmetry along a central vertical line, none of which appear in the Frappuccino Videos.

*Hands Across the Universe*

Hayuk's compares *Hands Across the Universe* to the photograph below:





**Starbucks' Mini Frappuccino**                    *Hands Across the Universe*

Compl. at 21.  It is unclear whether Hayuk is claiming that the Frappuccino Cup or the

background of the photograph infringe her work.  For purposes of this motion, however, the

answer to that question is immaterial, as nothing in the photo is substantially similar to *Hands*

*Across the Universe.*  Again, the signature elements of the *Universe* Works discussed above are

not present in the Frappuccino Cup, the background, or any of the other Frappuccino Works.  By

contrast, Defendant's image of the Frappuccino Cup simply has several multicolored stripes,

which generally radiate upwards to illustrate a flavor burst.

c.    *Sexy Gazebo*

Hayuk compares *Sexy Gazebo* to a screenshot of a YouTube Video:






**Starbucks' YouTube Video**                    *Sexy Gazebo*

Compl. at 21.  For the same reasons discussed in Point C.3.b above, this comparison of her static

work to a snippet of a video is improper and should be disregarded.

But again, even if *Sexy Gazebo* is compared to the Frappuccino Works, the total concept

and feel is starkly different.  The total concept and feel of *Sexy Gazebo* is of order within a

stunning, "trippy" complexity.  The Frappuccino Works are dissimilar to *Sexy Gazebo* in many

of the same crucial ways that apply to the *Universe* Works.  The screenshot above contains a

solitary set of rays emanating from a straw (in contrast to *Sexy Gazebo's* intricacy), and the other

Frappuccino Screenshots contained in the Complaint either have this same feature or contain a

jumbled array of stripes with no clear pattern (in contrast to *Sexy Gazebo's* order).  The

Frappuccino Webpages and In-Store Art contain haphazardly arranged, mostly even-width

stripes, where *Sexy Gazebo* contains rays emanating from clearly defined points.  The

Frappuccino Cup's stripes are arranged only vertically, while *Sexy Gazebo's* rays emanate in 360

degrees around their origins.  Moreover, none of the Frappuccino Works feature the distinct and

purposeful misalignment created by *Sexy Gazebo's* edges.

    4.    <u>Common Shapes and Colors Cannot Support a Copyright Claim</u>

In short, the Hayuk Works and the Frappuccino Works share some similar basic

geometric shapes and some similar colors.  Neither of these elements, standing alone, are

protectible under the copyright law.  *See Compendium of U.S. Copyright Office Practices, Third

Ed.*, Ch. 906.1 ("The Copyright Act does not protect common geometric shapes"); *id.* at Ch.

906.3 ("Mere coloration or mere variations in coloring alone are not eligible for copyright

protection.").  Moreover, courts regularly dismiss infringement claims for lack of substantial

similarity where, as here, the selection, coordination, and arrangement of unprotectible elements

yields works that differ markedly in total concept and feel.  *See, e.g.*, *Cameron*, 338 F. App'x at

71 (defendant's design not substantially similar to plaintiff's where plaintiff's design was "based

on standard geometric forms"); *Queenie, Ltd.*, 124 F. Supp. 2d at 181 (S.D.N.Y. 2000) (garments not substantially similar although both included "multi-colored squares posited against dark backgrounds"); *In Design v. Lynch Knitting Mills, Inc.*, 689 F. Supp. 176, 177 (S.D.N.Y.) (sweaters sharing "abstract, geometric design" not substantially similar), *aff'd sub nom. In Design v. Lynch Knitting*, 863 F.2d 45 (2d Cir. 1988).

If this Court were to permit plaintiff to seek recovery for an alleged infringement based on use of such basic elements of visual art even when used so differently, it would "directly contravene the underlying goal of copyright to 'encourage [ ] others to build freely upon the ideas and information conveyed by a work.'" *Peter F. Gaito Architecture, LLC*, 602 F.3d at 68 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50). In recognition of the fundamental copyright principle that "all creative works draw on the common wellspring that is the public domain," this Court should hold that the works at issue here are not substantially similar as a matter of law. *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 429 (S.D.N.Y. 2011) (internal quotations omitted).

D.     **Hayuk's Contributory Infringement Claim Must Be Dismissed**

In addition to her direct infringement claim against Defendants, Hayuk alleges a claim of contributory copyright infringement against 72andSunny. Compl. ¶¶ 77-83. This claim should be dismissed for failure to state a claim because, as set forth above, the Complaint fails to allege any direct copyright infringement. *See, e.g.*, *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement.")

24

## **CONCLUSION**

Defendants respectfully request that the Court enter an order: (i) dismissing the

Complaint with prejudice, in its entirety, (ii) awarding Defendants' their costs and attorneys' fees

and (ii) granting such other and further relief as the Court deems just and proper.

Dated: August 17, 2015

FRANKFURT KURNIT KLEIN & SELZ, P.C.


By:____/s/ Amelia K. Brankov_____
       Amelia K. Brankov
       Andrew D. Jacobs
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175
abrankov@fkks.com
ajacobs@fkks.com

*Attorneys for Defendants Starbucks Corporation*
*and 72andSunny Partners, LLC*